It is certainly not pleasant for me to have to say this, but here we go again. Today's opinion suggests that Alabama seems intent upon remaining the poster child for yet another form of abuse of the judicial system — the "drive-by" class certification. See Victor E. Schwartz, Mark A. Behrens, and Leah Lorber, Federal Courts Should Decide InterstateClass Actions: A Call for Federal Class Action Diversity JurisdictionReform, 37 Harv. J. on Legis. 483, 494, 499-501 (Summer 2000).[3] For the following reasons, I must strenuously dissent.
I must also state plainly that the main opinion's rationale seems illogical to me. The main opinion contains the following language:
 "The question of class certification is a procedural one distinct from the merits of the action. In finding that the loan documents and the restrictions contained in those documents did not create an agency relationship between H R Block and its clients, the trial court made a determination, as a matter of law, on the merits of the Mitchells' contractual-agency argument. A court should not make this kind of determination *Page 819 
regarding the merits of a plaintiff's case in a class-action certification hearing.
 ". . . In analyzing the question whether a fiduciary relationship existed between H R Block and its taxpayer clients, the trial court had reason to look beyond the pleadings, because each situation dealt with oral communications between H R Block and its clients. However, the contractual-agency issue requires the trial court to do nothing more than look to see if a uniform document existed and whether it was used uniformly by H R Block. In adjudicating the issue of the existence of a contractual-agency relationship between H R Block and its clients based on the loan document, the trial court erred."
783 So.2d at 816. (Citations omitted.) This passage from the main opinion makes it clear that the trial court was even less intrusive in its examination of the substantive issues required to address the agency issue than in its review of the fiduciary-relationship issue. Where is the analysis as to whether the trial court went too far as to the agency issue? How did the trial court go too far with one and not the other? I do not see the distinction between addressing the substantive issues behind the question whether there was a fiduciary relationship and addressing the substantive issues behind the agency allegation. The only difference appears to be that the trial judge did not have to expend as much energy on the agency issue. The conclusion of the main opinion does not follow from the facts of the case.
The trial judge explained his reasoning carefully; he could not decide whether this putative class action met the threshold requirements of Rule 23, Ala.R.Civ.P., without addressing the agency issue. Are we now restricting the ability of trial judges to make a rigorous analysis of the factors involved in class-action certifications? Even if deciding the agency issue was not essential to the trial court's determination of whether Rule 23 had been complied with, the court had to address the agency issue, or else there was no need to address the fiduciary-relationship issue. But for the failure of the agency issue, there was no need for the trial court to address the fiduciary-relationship issue. If there is no agency relationship between the Mitchells and H R Block, and there appears not to be one,[4] then the only possible basis for the Mitchells' action against H R Block would have to be the alleged fiduciary relationship between H R Block and the Mitchells. However, the trial judge made it clear that the fiduciary-relationship allegation cannot be the basis for a class action, because of the many individual questions that would have to be answered as to each class member's interaction with H R Block.
The main opinion's treatment of the fiduciary-relationship issue ignores Rule 23(b)(3), Ala.R.Civ.P., which requires that the plaintiffs prove "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The trial judge's order plainly states that the Rule 23(b)(3) provision was the reason he found it necessary to review the agency issue. Without the agency relationship, this class action does not comply with Rule 23 and, therefore, should not be certified. Those concurring with the main opinion ignore this requirement and state that the trial judge erred. How can such an analysis, if it can be called such, assist the bench and bar *Page 820 
with this difficult subject? It simply perpetuates Alabama's reputation for giving simplistic analyses of class-certification questions, a reputation I thought this Court had been trying to correct (at least since I became Chief Justice) by using appropriate rules to promote a disciplined process.[5]
Also, the main opinion itself states that there will be times when a court must "`look behind the pleadings . . . to examine the nature of the claims and defenses, the relevant facts, and the substantive law, in order to make a meaningful determination of certification issues.'" 783 So.2d at 816 (quoting Ex parte AmSouth Bancorporation, 717 So.2d 357,363 (Ala. 1998)). Again, what is the difference between looking behind the pleadings as to the fiduciary-relationship issue and looking behind the pleadings as to the agency-relationship issue? I also wonder what the purpose is in allowing the former and disallowing the latter during the certification process. How does that decision help the trial court, which may conclude, after holding a class-action trial, with all its attendant expenses,[6] that there was no agency relationship between H R Block and the Mitchells and dismiss the case? How does that promote judicial economy? Given these considerations, I do not understand the reasoning of the main opinion.
I would deny the petition because the questions of law or fact common to the members of the class do not predominate over any question affecting only individual members. The trial judge wrote a carefully crafted, 21-page memorandum explaining his decision. He performed the analysis he was required to perform in order to meet the requirement, imposed by the procedural rules and this Court, for a rigorous analysis for certification purposes. This Court must not undercut the very standards it has sought to apply in class actions to protect parties from the excesses that derive from loose standards. I see *Page 821 
this Court retreating from the very directives it has issued to the trial courts of this State to rein in "drive-by" class actions. Therefore, I vigorously dissent.
[3] The authors state: "Entrepreneurial plaintiffs' lawyers can draft broad claims so as to pull in the greatest possible number of potential class members. A large class gives a plaintiffs' attorney leverage against a defendant and creates the potential to generate lucrative windfall fees with low marginal investment. These fees often are obtained at the expense of the lawyer's own clients.
 "Kamilewicz v. Bank of Boston Corp [92 F.3d 506 (7th Cir. 1996), cert. denied, 520 U.S. 1204 (1997)] provides a perfect example. That case involved allegations that the Bank of Boston had over-collected escrow monies from homeowners and profited from the interest. The settlement, approved by an Alabama judge, awarded up to $8.76 to individual class members. The plaintiffs' lawyers received more than $8.5 million in fees, which were debited directly from individual class members' escrow accounts."
37 Harv. J. on Legis. at 494.
 "Abuse is occurring now. Some state courts are so lax in their application of class certification standards that fundamental due process protections are threatened. In one instance an Alabama judge certified a nationwide class of persons who alleged that their house siding was defective, while a federal district judge later rejected class certification in an action against the same defendant and presenting identical legal issues. The federal judge found that the parties' due process rights, among others, rendered class treatment impossible.
 "Similarly, an Alabama state court judge certified a nationwide class of consumers who had purchased allegedly defective sport utility vehicles. The state court plaintiffs claimed, inter alia, that design and manufacturing defects caused the vehicles to roll over and that the defendant fraudulently marketed the vehicle. A federal judge in the Eastern District of Louisiana had earlier been confronted with similar factual and legal claims against the same defendant in a similar lawsuit, but had refused to certify a nationwide class because he concluded that certifying a class in such a case would result in denial of due process and jury trial rights. While the state and federal lawsuits were separate actions, the state court was faced with the exact same issues in resolving the class certification motion as was the federal court. The state court judge certified the class anyway, without explaining why or whether he believed the federal court's determination to be erroneous."
37 Harv. J. on Legis. at 500-01.
[4] See Peterson v. H R Block Tax Servs., Inc., 971 F. Supp. 1204
(N.D.Ill. 1997) and Basile v. H R Block, Inc., 729 A.2d 574 (Pa.Super. Ct. 1999).
[5] See Ex parte AmSouth Bancorporation, 717 So.2d 357 (Ala. 1998);Citicorp Acceptance Co., 715 So.2d 199 (Ala. 1997); Ex parte ExxonCorp., 725 So.2d 930 (Ala. 1998); Ex parte Mayflower Nat'l Life Ins.Co., 771 So.2d 459 (Ala. 2000); Ex parte GovernmentEmployees Ins. Co., 729 So.2d 299 (Ala. 1999); Ex parte WaterWorks Sewer Bd. of the City of Birmingham, 738 So.2d 783 (Ala. 1999);Ex parte Prudential Ins. Co. of America, 721 So.2d 1135 (Ala. 1998); Exparte State Mut. Ins. Co., 715 So.2d 207 (Ala. 1997); Ex parte AmericanBankers Life Assurance Co. of Florida, 715 So.2d 186 (Ala. 1997; Ex parteMercury Fin. Corp., 715 So.2d 196 (Ala. 1997); Ex parte Equity Nat'lLife Ins. Co., 715 So.2d 192 (Ala. 1997); Ex parte First Nat'l Bank ofJasper, 717 So.2d 342 (Ala. 1997).
[6] That is, if the case goes that far. Defendants often feel forced to settle because of the excessive costs associated with a massive nationwide class action:
 "Class actions — once considered an efficient means for grouping together large numbers of individuals with common legal claims — have become a cash cow for plaintiffs' attorneys who find state courts willing to sanction sweetheart settlements that enrich the lawyers, but provide little or no actual benefit to their clients, the class members."
37 Harv. J. on Legis. at 483.
 "The certification of a class action places tremendous pressure on a defendant to settle, regardless of a case's merit. `For defendants, the risk of participating in a single trial [of all claims], and facing a once-and-for-all verdict is ordinarily intolerable,' even where an adverse judgment is improbable. As Judge Posner of the Seventh Circuit Court of Appeals observed, certification of class actions forces defendants `to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability.' He explained further: `[Defendants] may not wish to roll these dice. That is putting it mildly. They will be under intense pressure to settle.' Judge Posner called the resulting settlements `blackmail settlements.'
37 Harv. J. on Legis. at 490-91. (Citations omitted.)